IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | NO. 4:17-CV-375-A |
| LEGEND BANK, N.A., | | |
| Defendant. | | |

## MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the motion of defendant, Legend Bank, N.A., for summary judgment. The court, having considered the motion, the response of plaintiff, Midwestern Cattle Marketing, LLC, the reply, the record, the summary judgment evidence,[1] and applicable authorities, finds that the motion should be denied in part and granted in part.

I.

### Plaintiff's Claims

The operative pleading is plaintiff's first amended complaint filed March 19, 2018. Doc.[2] 23. In it, plaintiff

---

[1] The court has also considered plaintiff's objections to defendant's summary judgment evidence. In accordance with the court's custom, the court is not striking any of the evidence, but has given it whatever weight it deserves. The court has considered defendant's evidence despite defendant's failure to appropriately highlight its appendices since the motion is primarily a no-evidence motion.

[2] The "Doc.___" reference is to the number of the item on the docket in this action.

alleges:

At all relevant times plaintiff was a cattle broker, matching cattle producers with cattle buyers. Doc. 23 ¶ 11. In July 2011, plaintiff's president, Jason O'Connell ("Jason") met Tony Lyon ("Tony") at a sale barn. Shortly thereafter, plaintiff entered into a business arrangement with Tony, and his parents, Owen ("Owen") and Monna ("Monna") Lyon, through their business, Lyon Farms. Id. ¶ 12. Lyon Farms used a bank account at defendant known as the Owen and Monna D Lyon Cattle Account (the "Legend account"). Owen and Monna were the only signatories on the Legend account. Id. ¶ 13. Owen worked for a pipeline company and Monna was a retired teacher's assistant. They were elderly and retired. Id. ¶ 14.

For over three years, plaintiff purchased cattle from and sold cattle to Lyon Farms. These transactions were completed using checks from plaintiff's account at Points West Bank in Sidney, Nebraska (the "Points West account"), and the Legend account. Id. ¶ 16. Early in 2014, plaintiff provided to the Lyons a checkbook and a signature stamp on the Points West account so that they could sign checks on its behalf after receiving authorization. Tony also provided plaintiff with blank checks from the Legend account signed by Monna, with the amount to be filled in upon Tony's instructions. Id. ¶ 17.

Starting in late 2014, Tony represented to plaintiff that he had met a big money cattle buyer named John George with George Cattle Company. Id. ¶ 18. Unbeknownst to plaintiff, John George and George Cattle Company did not exist, but was used as a front for a check-kiting scheme. Id. ¶ 20. Typically, Tony would write a check on plaintiff's Points West account purportedly for funds to be used by Tony for cattle he said he was purchasing for George Cattle Company, Owen would deposit that check to the Legend account and Tony would provide plaintiff a handwritten invoice by fax that provided information about the cattle purportedly being purchased; Tony would request plaintiff to prepare an invoice for George Cattle Company, which plaintiff would do and send by fax to Tony; Tony would inform plaintiff that he had delivered the cattle to George Cattle Company and that George Cattle Company had paid Lyon Farms for the cattle; Tony would then inform plaintiff that it was authorized to fill out one of the checks pre-signed by Monna on the Legend account, and plaintiff would fill out the amount specified by Tony on a pre-signed check, and deposit it into the Points West account. Id. ¶ 19.

The arrangement between plaintiff and Tony was that plaintiff would never take possession of the cattle directly. Id. ¶ 21. Instead, possession of the cattle purportedly remained

with Tony until the cattle were transferred to the fictitious buyer, George Cattle Company. Id.

In late-2014 and early-2015, the activity in the Legend account increased, the dollar amounts of the transactions increased substantially, and overdrafts on the account became frequent. Id. ¶ 28. Most of the overdrafts were created by checks drawn on the Legend account payable to plaintiff. Id. ¶ 32. Defendant, through Brennan Williams ("Brennan"), the president of its Decatur branch, knew beginning in early 2015 of irregular activity in the Legend account. Id. ¶ 31-32. The amount of the overdrafts grew from about $152,000 in February 2015 to over $4.4 million in June 2015. Id. ¶ 35. Brennan approved each of the overdrafts. Id. ¶ 37.

During that time period, Brennan and his father, Brent, received $118,506, initially by a check written on the Points West account, that was later replaced by a check drawn on the Legend account, from an alleged sale of cattle by them to the Lyons, id. ¶¶ 42-48; and defendant made sure its loans to the Lyons were repaid before the collapse of the check-kiting scheme. Id. ¶¶ 49-52, 60-65. The scheme collapsed in late-June 2015 when Brennan, with the concurrence of Owen, returned for insufficient funds a check payable to plaintiff, drawn on the Legend account, for $5,020,230.11. Id. ¶ 64.

On July 6, 2015, plaintiff obtained a prejudgment writ of garnishment against defendant as garnishee for the indebtedness of the Lyons to plaintiff in the amount of $5,020,230.11. Id. ¶ 96. On August 3, 2015, $81,381.05 was deposited to the Legend account on behalf of the Lyons. Defendant transferred $72,500 from the Legend account to pay down the remaining balance on a line of credit despite the pending writ garnishment. Id. at 98.

Plaintiff asserts causes of action for fraudulent transfer (Count One), money had and received (Count Two), unjust enrichment (Count Three), common law fraud (Count Four), aiding and abetting (Count Five), conspiracy (Counts Six and Seven), violation of the garnishment statute (Count Eight), negligent misrepresentation (Count Nine), violations of the Uniform Commercial Code (Count Ten), and negligence, negligence per se, and gross negligence (Count Eleven). Plaintiff also seeks exemplary damages and attorney's fees.

II.

## Grounds of the Motion

Defendant seeks judgment as to each of the claims asserted by plaintiff, as discussed hereinafter.

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324; <u>see also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy Sys., Inc. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[3] <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. & Advocacy Sys.</u>, 929 F.2d at 1058.

---

[3] In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

IV.

Analysis[4]

Count Ten (Uniform Commercial Code)

In Count Ten, plaintiff alleges that defendant did not act in good faith and failed to comply with reasonable commercial standards in administering its responsibilities under the Uniform Commercial Code. Doc. 23 ¶¶ 103-07. Defendant maintains that it owed no duty to plaintiff, with which it had no contract or any other relationship. Under Texas law, a bank does not owe a duty to detect and stop a check-kiting scheme to someone who is not a customer of the bank or does not otherwise have a special relationship. Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A., 181 S.W.3d 790, 804 (Tex. App.--Waco 2005, pet. denied); Ennis State Bank v. Heritage Bank, No. 10-02-00226-CV, 2004 WL 1109833 (Tex. App.--Waco May 12, 2004, pet. denied). This is in keeping with Texas's recognition that the UCC has the objective of promoting certainty and predictability in commercial transactions. See Southwest Bank v. Information Support Concepts, Inc., 149 S.W.3d 104 (Tex. 2004). Recognizing a UCC duty owed to one outside the UCC scheme would be contrary to the UCC's goals.

---

[4]The court analyzes the issues in the same order presented by the parties, rather than the sequential order of the amended complaint.

Id. at 111. Plaintiff's one paragraph response does not cite any cases to support its position to the contrary. Doc. 35 at 36.

Count Eleven (Negligence, Negligence Per Se, and Gross Negligence)

In Count Eleven, plaintiff alleges that defendant owed it and other participants in the United States banking system a duty or duties to exercise a degree of care and skill provided by federal regulations and regulatory agencies to monitor and detect suspicious or fraudulent activity. Doc. 23 ¶¶ 108-12. Again, defendant argues that it owed no duty to plaintiff. Owens v. Comerica Bank, 229 S.W.3d 544, 547 (Tex. App.--Dallas 2007, no pet.)(generally a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship). See also Marlin v. Moody Nat'l Bank, N.A., 248 F. App'x 534, 540 (5th Cir. 2007); Red Rock Invs. v. Jafco, Ltd., 79 F.3d 1146, 1996 WL 97549, at *4 (5th Cir. 1996)(bank owes no legal duty of care to investigate or disclose its customers' conduct or intent to third parties with whom the bank's customers do business). Further, a bank's internal policies do not create a standard of care. Guerra v. Regions Bank, 188 S.W.3d 744, 747 (Tex. App.--Tyler 2006, no pet.). Although plaintiff argues that the cases defendant relies upon are not directly in point, neither are the

cases cited by plaintiff in its attempt to create a duty where one has not been recognized by a Texas court to exist.[5]

Finally, the court notes that even if it could be said that defendant owed plaintiff a duty, it appears that the only injury suffered by plaintiff is economic. Texas does not allow recovery in negligence where the damages result solely from economic harm. See LAN/STV v. Martin K. Eby Constr. Co., 435 S.W.3d 234 (Tex. 2014); Express One Int'l, Inc. v. Steinbeck, 53 S.W.3d 895, 898-99 (Tex. App.--Dallas 2001, no pet.); Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 287-89 (Tex. App.--Houston [14th Dist.] 2000, no pet.).

Count One (Texas Uniform Fraudulent Transfer Act)

In Count One, plaintiff seeks to hold defendant liable under the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code § 24 (West 2015 & Supp. 2017)("TUFTA"). Specifically, plaintiff alleges:

> [Plaintiff] was a creditor of the Lyons under the TUFTA at the time of, or a reasonable time after: (1) the Lyons transferred $118,506 from the Legend Account to Brent Williams; (2) the Lyons transferred over $275,000 from the Legend Account to [defendant] for purported

---

[5] The court does note that some of the cases plaintiff cites indicate that equity would prevent defendant from exercising its right of offset in the event that funds in the account were held in trust for plaintiff. See, e.g., Nat'l Indemnity Co. v. Spring Branch State Bank, 348 S.W.2d 528, 529 (Tex. 1961); Steere v. Stockyards Nat'l Bank, 256 S.W. 586, 590-91 (Tex. 1923); Pan Am. Nat'l Bank v. Holiday Wines & Spirits, Inc., 580 S.W.2d 7, 10 (Tex. Civ. App.--Houston [1st Dist.] 1979, writ ref'd n.r.e.). These cases do not recognize a duty owed by a bank to a non-customer that would support a negligence claim like the one asserted here.

payments on a line of credit between June 16-29, 2015;
(3) the Lyons transferred $67,891 from the Legend
Account to [defendant] to pay off vehicle loans,
between January 1 and June 29, 2015; (4) the Lyons
transferred $72,5000 [sic] to [defendant] for purported
payment on a line of credit, on or around August 3,
2015; and (5) the Lyons transferred $4,386,650.22 to
cover the overdraft in the Legend Account for which
they would have been personally liable.

Doc. 23 ¶ 73. Plaintiff says that defendant facilitated the transfers with knowledge of the Lyons' suspicious and irregular account activity and it knew or should have known that the Lyons intended to hinder, delay, or defraud plaintiff. Id. ¶ 74.

Defendant maintains that TUFTA does not apply because the property at issue here, funds deposited, was subject to a valid lien. In Texas, a bank has a common law right of setoff to funds in an account at the bank. Mauriceville Nat'l Bank v. Zernial, 892 S.W.2d 858, 860 (Tex. 1995). In addition, a deposit agreement may create such right, as it does in the case of the Legend account. Id.

An exception to the right of setoff exists where a pre-deposit agreement gives the bank notice that the funds deposited are held in trust. Id. at 859-60; Continental Nat'l Bank of Fort Worth v. Great Am. Mgmt. & Inv., Inc., 606 S.W.2d 346, 347-50 (Tex. Civ. App.--Fort Worth 1980, writ ref'd n.r.e.). In this case, there is no such agreement.

Texas courts also recognize an equitable exception to the right of setoff. Under that exception, even if the bank had no notice of the character of the funds, it could still be liable to the extent it applied the funds to its depositor's debt. Nat'l Indem. Co. v. Spring Branch State Bank, 348 S.W.2d 528, 531 (Tex. 1961). Here, plaintiff has at least raised an issue as to whether the offset of the account should be allowed to stand.[6] Arguably, the funds in the Legend account belonged to plaintiff as they purportedly represented proceeds of a sale of plaintiff's cattle. And, there is no reason to believe that defendant changed its position to its detriment; i.e., defendant will not be harmed by returning the offset funds to plaintiff, because it will be in the same position where it stood at the time of the deposit.

Counts Two and Three (Money Had and Received and Unjust Enrichment)

In Count Two, plaintiff alleges a claim for money had and received. Doc. 23 ¶¶ 76-78. Count Three purports to allege a claim for unjust enrichment. Id. ¶¶ 70-81. Unjust enrichment, however, is merely a theory of liability that a plaintiff can pursue through an equitable cause of action, such as money had and received, but not as a separate and distinct claim. Hancock

---

[6]There is no reason to believe that TUFTA applies with regard to the negotiation of the sale barn check, which represented proceeds from the sale of cattle in which defendant had a long-standing security interest and was made payable to defendant and Owen and was not deposited into the Legend account.

12

v. Chicago Title Ins. Co., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009); Amoco Prod. Co. v. Smith, 946 S.W.2d 162, 164 (Tex. App.--El Paso 1997, no writ). To prevail on a claim for money had and received, plaintiff must show that defendant holds money that in equity and good conscience belongs to plaintiff. L'Arte de la Mode, Inc. v. Neiman Marcus Group, 395 S.W.3d 291, 296 (Tex. App.--Dallas 2013, no pet.). Ownership of the check proceeds is an essential element of the claim. American Petrofina Co. v. Panhandle Pet. Prods., Inc., 646 S.W.2d 590, 592 (Tex. App.--Amarillo 1983, no writ). Generally, when funds are deposited into a bank account, they are unrestricted and the bank's obligation is to pay the funds pursuant to the depositor's instructions, subject to the bank's right of setoff. Mauriceville Nat'l Bank, 892 S.W.2d at 860. See Miller-Rogaska v. Bank One, Tex., 931 S.W.2d 655, 663 (Tex. App.--Dallas 1996, no writ)(a non-holder of a check cannot maintain an action for money had and received).

As defendant notes, one who seeks equity must come to court with clean hands. Grohn v. Marquardt, 657 S.W.2d 851, 855 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.). Defendant says that plaintiff cannot establish that it has clean hands. Among other things, plaintiff contributed to its own predicament by giving Tony its checkbook and a signature stamp, knowing that Tony was a convicted felon. Doc. 28 at 39-40. Plaintiff responds that

13

defendant is just as culpable. Doc. 35 at 44-47. Nevertheless, the court is not persuaded that money had and received can be pursued by plaintiff in this case.

Counts Four and Nine (Fraud and Negligent Misrepresentation)

In Count Four, plaintiff asserts a claim for common law fraud. Doc. 23 ¶¶ 82-84. In Count Nine, it asserts a claim for negligent misrepresentation. Id. ¶¶ 100-02. Defendant says that plaintiff cannot prevail on either claim as both require the making of a false representation. See Zorilla v. Aypco Constr. II, LLC, 469 S.W.3d 143, 153 (Tex. 2015)(common law fraud); McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999)(negligent misrepresentation). Defendant maintains that it made no representations to plaintiff. See Neuhaus v. Kain, 557 S.W.2d 125, 138 (Tex. App.--Corpus Christi 1977, writ ref'd n.r.e.). Specifically, presentment of a check is not a factual assertion that can be characterized as true or false; it is simply not a representation of status of bank account balance or anything else. Doc. 28 at 42 (citing United States v. Briggs, 939 F.2d 222, 226-27 (5th Cir. 1991)).

Plaintiff has not shown that defendant made any false representations to it, directly or indirectly,[7] much less pleaded

---

[7] Plaintiff simply cites to statements for the Legend account, but not to any statements made to
(continued...)

14

in the manner required by Rule 9(b) of the Federal Rules of Civil Procedure that such is the case.

Counts Five Through Seven (Conspiracy and Aiding and Abetting)

In Count Five plaintiff asserts a claim for aiding and abetting the Lyons' check-kiting scheme. Doc. 23 ¶¶ 85-88. In Counts Six and Seven, it alleges that defendant conspired with the Lyons and with Brennan and Brent, respectively. Id. ¶¶ 89-92; 93-94. Again, the claims are not sufficiently pleaded. Fed. R. Civ. P. 9(b). Counts Five and Six purport to stand on the notion that defendant "placed the integrity of the banking system in question." Doc. 23 ¶¶ 86, 90.

The elements of a conspiracy are: defendant was a member of a combination of two or more; the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; the members had a meeting of minds on their object or course of action; one member committed an unlawful, overt act to further the course of action; and, the plaintiff suffered injury as a proximate result of the wrongful act. Chon Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).

Plaintiff has alleged two different conspiracies, but failed to establish a genuine fact issue as to each element of either of

---

[7](...continued)
plaintiff's bank. Doc. 35 at 55.

them. In particular, with regard to Count Six, evidence of a combination is lacking. See Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979)(plaintiff must show establish facts to show that there was an agreement to inflict a wrong or injury upon the plaintiff). Even assuming that defendant knew of the check-kiting, allowing it to happen is a far cry from actively participating in it. Conspiracy must be based on more than speculation and conjecture.

With regard to Count Seven, the allegations are even more speculative. A corporation cannot conspire with itself. Leasehold Expense Recovery, Inc. v. Mothers Work, Inc., 331 F.3d 452, 463 (5th Cir. 2003). Thus, because plaintiff makes clear that Brennan was acting in the course and scope of his employment, Doc. 35 at 51 & n.7, he cannot have been a conspirator with defendant. Further, there is no evidence that Brent conspired with anyone.

The elements of aiding and abetting are: the primary actor committed a tort; the defendant had knowledge that the primary actor's conduct constituted a tort; the defendant had the intent to assist the primary actor in committing the tort; the defendant gave the primary actor assistance or encouragement; and, the defendant's assistance or encouragement was a substantial factor in causing the tort. Restatement (Second) of Torts, § 876(b).

The parties do not dispute that Tony committed a tort. The question is whether plaintiff has raised genuine fact issues as to the remaining elements of aiding and abetting. Clearly, at some point defendant should have known that Tony's conduct constituted a tort and arguably there is a fact issue as to whether it did know. But, plaintiff has not pointed to evidence to show that defendant had the intent to assist Tony in committing the tort. Instead, the evidence shows that defendant acted in its own best interests. The court is not persuaded, and plaintiff has not pointed to law establishing, that defendant can be held liable for aiding and abetting because it "allowed [the Lyons] to participate in the banking system." Doc. 35 at 54.

Count Eight (Wrongful Garnishment)

In Count Eight, plaintiff alleges that defendant violated the garnishment statute, Tex. Civ. Prac. & Rem. Code § 63, by transferring to itself money from "the Lyons' accounts" to pay down the remaining balance of their line of credit after it had been served with a writ of garnishment. Doc. 23 ¶¶ 95-99. Defendant maintains that it had the right to setoff, which it exercised. Gill v. Oak Cliff Bank & Tr. Co., 331 S.W.2d 832, 834 (Tex. Civ. App.--Amarillo 1959, no writ). It also urges that this claim is barred by res judicata as it should have been determined in the garnishment action.

17

The summary judgment evidence shows that on July 10, 2015, defendant was served with the writ of garnishment. On July 20, 2015, defendant filed its answer to the garnishment stating that it was indebted to Owen in the amount of $37.53 and was not indebted to Tony or Monna. On August 3, 2015, the Decatur Livestock Market, LLC, issued a check to Owen and defendant for the sale of cattle in which defendant had a security interest. Owen endorsed the check and it was deposited into defendant's general account to reduce Owen's debt to defendant. By letter dated August 4, 2015, plaintiff inquired into the sale of cattle and defendant's security interest in them. On April 7, 2017, final judgment was rendered in the garnishment action, as agreed and approved by plaintiff.[8]

Plaintiff argues that defendant violated the garnishment statute by extending credit of $72,500 to Owen on July 2, 2015, and further, that a bank cannot circumvent garnishment by fraudulently offsetting debts before a court can issue a writ of garnishment. Doc. 35 at 57. But the case cited does not support those propositions. And, in any event, the evidence does not show that defendant anticipated the writ of garnishment (for which application was not made until July 6) in extending credit on

---

[8] The court notes that the judgment does not mention defendant, which was a party to the proceeding. Plaintiff does not dispute that the judgment was final as to defendant.

18

July 2. Whether defendant acted appropriately throughout the course of events, plaintiff has not raised a genuine fact issue as to violation of the garnishment statute.

Count Twelve (Exemplary Damages)

In Count Twelve, plaintiff seeks to recover exemplary damages for injuries resulting from defendant's "malice, fraud or gross negligence." Doc. 23 ¶¶ 113-14. For the reasons discussed, plaintiff cannot prevail on its fraud or gross negligence claims. And, even if there were a genuine fact issue as to those claims, the evidence does not rise to the level of clear and convincing needed to support exemplary damages. See Anderson, 477 U.S. at 254.

V.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted in part; that plaintiff take nothing on its claims asserted in Counts Two through Twelve of the amended complaint; and, that such claims be, and are hereby, dismissed.

19

The court further ORDERS that the motion for summary judgment be, and is hereby, otherwise denied.

SIGNED May 16, 2018.

_____
JOHN McBRYDE
United States District Judge